POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANJIV BALDWIN, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>INTUIT INC., SASAN K. GOODARZI, and SANDEEP S. AUJLA,<br><br>Defendants. | Case No.<br><br>CLASS ACTION<br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Sanjiv Baldwin ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Intuit Inc. ("Intuit" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff

1

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

### NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Intuit securities between August 22, 2025 and May 20, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2. Intuit provides financial management, payments and capital, compliance, and marketing products and services in the U.S. The Company has four reportable business segments: (i) Global Business Solutions; (ii) Consumer; (iii) Credit Karma; and (iv) ProTax. Intuit's Consumer segment provides do-it-yourself ("DIY") and assisted income tax preparation products and services under the "TurboTax" brand name, whereas its ProTax segment provides tax-preparation software products and electronic tax filing, payment, and related products and services. The Company sells its products and services through direct sales channels, multichannel shop-and-buy experiences, mobile application stores, and partner and other channels.

3. At all relevant times, Defendants touted purportedly significant "momentum" across Intuit's various business segments, particularly with respect to its tax-related business. Defendants attributed this purported "momentum" to, *inter alia*, Intuit's purportedly significant competitive advantages, including integration of artificial intelligence ("AI") in its business and operations.

4. For example, in August 2025, Defendants provided financial guidance for Intuit's fiscal full year ("FY") of 2026, ended July 31, 2026, including 8% revenue growth in its TurboTax

business, citing "outstanding execution across our platform" and "breakthrough adoption in assisted tax" as a result of the aforementioned purported competitive advantages.

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.    Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) they had overstated Intuit's competitive advantages and growth, as well as the overall strength and sustainability of its business model and operations; (ii) in reality, Intuit was losing significant business in its tax-related business, particularly in its Turbo Tax business, as a result of, *inter alia*, increasing competitive and pricing pressures; (iii) accordingly, Intuit's previously issued FY 2026 TurboTax revenue growth guidance was unreliable and/or unrealistic; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

6.    The truth began to emerge on May 20, 2026, when, during pre-market hours, *Reuters* published an article entitled "Intuit to cut 17% of global jobs to streamline operations, memo shows".  Citing an internal Company memorandum and email from Defendant Sasan K. Goodarzi ("Goodarzi"), Intuit's Chairman and Chief Executive Officer ("CEO"), to staff earlier in the day, the article reported that "Intuit . . . is laying off about 17% of its workforce, or about 3,000 employees worldwide, to streamline operations and sharpen focus on its key bets including its AI efforts[.]"  The article further revealed that Intuit "is also winding down its Reno and Woodland Hills offices as part of a strategic restructuring to consolidate teams in key hubs, according to the memo."

7.    On this news, Intuit's stock price fell $15.78 per share, or 3.95%, to close at $383.93 per share on May 20, 2026.

8.    The same day, during post-market hours, Intuit issued a press release announcing its fiscal third quarter ("Q3") 2026 results.  Therein, Defendants reported weak Q3 2026 tax

3

season revenue, including, *inter alia*, TurboTax revenue that grew by only 7% year-over-year ("Y/Y"), versus consensus estimates of at least 8% revenue growth. During the accompanying earnings call held the same day, also during post-market hours, Defendant Sandeep S. Aujla ("Aujla"), Intuit's Executive Vice President ("EVP") and Chief Financial Officer ("CFO"), acknowledged that, with respect to Turbo Tax, "we did not have the overall tax season we expected[.]" On the same call, Defendant Goodarzi likewise stated that he was "dissatisfied with our performance", noting "[w]e faced pressure among the most price-sensitive DIY filers earning less than $50,000 a year", and that "[w]e lost on price." Defendant Goodarzi also revealed that TurboTax online paying units were expected to grow by only 2% as total Internal Revenue Service ("IRS") filers were expected to decline by approximately 30 basis points, representing the "most significant industry-wide contraction since the post-COVID tax season." Accordingly, Defendant Goodarzi acknowledged that "we expect TurboTax to grow 7% for the full year"—down from Defendants' prior guidance of 8% growth—and that, "[t]o reaccelerate this part of our business," Defendants will need to "evolve our business model by delivering the right lineups and price points to meet simple filers' needs at the low end and lean into the power of our broader Consumer platform to monetize beyond tax."

9.     Following these disclosures, Intuit's stock price fell $76.86 per share, or 20.02%, to close at $307.07 per share on May 21, 2026.

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

4

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

**JURISDICTION AND VENUE**

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Intuit is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

**PARTIES**

15.     Plaintiff, as set forth in the attached Certification, acquired Intuit securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.     Defendant Intuit is a Delaware corporation with principal executive offices located at 2700 Coast Avenue, Mountain View, California 94043.  The Company's common stock trades in an efficient market on the Nasdaq Global Select Market ("NASDAQ") under the ticker symbol "INTU".

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

17.     Defendant Goodarzi has served as Intuit's CEO at all relevant times, and also currently serves as the Company's Chairman.  During the Class Period, Defendant Goodarzi sold 55,756 shares of the Company's common stock, enriching himself by over $36 million.

18.     Defendant Aujla has served as Intuit's EVP and CFO at all relevant times.  During the Class Period, Defendant Aujla sold 8,782 shares of the Company's common stock, enriching himself by over $5 million.

19.     Defendants Goodarzi and Aujla are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of Intuit's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Intuit's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Intuit, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     Intuit and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.     Intuit provides financial management, payments and capital, compliance, and marketing products and services in the U.S.  The Company has four reportable business segments:

6

(i) Global Business Solutions; (ii) Consumer; (iii) Credit Karma; and (iv) ProTax. Intuit's Consumer segment provides DIY and assisted income tax preparation products and services under the "TurboTax" brand name, whereas its ProTax segment provides tax-preparation software products and electronic tax filing, payment, and related products and services. The Company sells its products and services through direct sales channels, multichannel shop-and-buy experiences, mobile application stores, and partner and other channels.

23.     At all relevant times, Defendants touted purportedly significant "momentum" across Intuit's various business segments, particularly with respect to its tax-related business. Defendants attributed this purported "momentum" to, *inter alia*, Intuit's purportedly significant competitive advantages, including integration of AI in its business and operations.

### Materially False and Misleading Statements

24.     The Class Period begins on August 22, 2025, the day after Intuit issued a press release during post-market hours, announcing its fourth quarter ("Q4") and FY 2025 results. The press release provided FY 2026 financial guidance, including, *inter alia*, "TurboTax [revenue] growth of 8 percent[.]"

25.     The press release also quoted Defendant Aujla as touting Intuit's "big bets that delivered accelerated growth" and the "outstanding execution across our platform, ***driving breakthrough adoption in assisted tax***, introducing transformative AI agents across our business platform, and building our mid-market go-to-market capabilities, all while driving strong margin expansion."[1]

26.     On September 3, 2025, Intuit filed an annual report on Form 10-K with the SEC, reporting its financial and operating results for its Q4 and FY ended July 31, 2025 (the "2025 10-

---

[1] All emphases herein are added unless otherwise indicated.

7

K"). The 2025 10-K made various representations regarding the success of Intuit's business and growth strategy. For example, the 2025 10-K stated, *inter alia*, that "***[w]e have a significant competitive advantage*** with our scale of data, data services, AI capabilities, ecosystem of applications, and our large network of AI-enabled human experts to become the all-in-one platform for consumers, businesses, and accountants."

27. In a similar vein, the 2025 10-K stated, *inter alia*, that "[o]ur strategy, combined with our Big Bets that focus on the largest customer problems and growth opportunities, ***positions us for durable growth***"; that Intuit's AI agents, "[c]ombined with our AI-enabled human experts, . . . are automating workflows and delivering real-time insights to ***drive growth and improve cash flow***"; and that Intuit's generative AI operating system "enables us to rapidly deliver a new class of intelligent, autonomous financial solutions that ***will define the next decade of growth . . . for Intuit***."

28. The 2025 10-K also assured investors, in relevant part, that "[w]e ***have driven significant momentum across the company*** over the past year" and, "[l]ooking ahead, we ***are doubling down on the areas that drove strong results this year*** where the combination of AI and human intelligence delivers done-for-you experiences, helps customers put more money in their pockets, and builds our mid-market business."

29. Appended as exhibits to the 2025 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified that the 2025 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

30.    On September 18, 2025, Intuit issued a press release "reaffirm[ing] its financial guidance for the . . . full fiscal year 2026 in conjunction with its Investor Day", including, *inter alia*, "TurboTax [revenue] growth of 8 percent[.]"

31.    The same press release quoted Defendant Goodarzi as stating, in relevant part, that "[w]e're . . . ***delivering sustained growth for years to come***."

32.    On November 20, 2025, Intuit issued a press release announcing its first quarter ("Q1") 2026 results.  The press release "reiterated [Intuit's] full fiscal year 2026 segment revenue guidance", including "TurboTax growth of 8 percent[.]"

33.    The same press release quoted Defendant Aujla as touting Intuit's "reiterat[ed] . . . full year guidance for fiscal 2026", citing "a strong first quarter of fiscal 2026, ***driven by continued momentum across the company***[.]"

34.    Also on November 20, 2025, Intuit filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q1 of 2026, ended October 31, 2025 (the "Q1 2026 10-Q").  The Q1 2026 10-Q contained substantively the same statements as referenced in ¶¶ 26-27, *supra*, regarding Intuit's purported "significant" competitive advantages, including its business strategy and AI technologies purportedly positioning it for "durable growth."

35.    Appended as exhibits to the Q1 2026 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by the Individual Defendants.

36.    On December 18, 2025, Intuit issued a press release announcing "the second year of its successful brand campaign 'Now This is Taxes' for tax year 2025 (taxes filed in 2026)." The press release widely touted the Company's tax-related business marketing strategy, including "Mid-to-Lower Funnel Optimization", stating, *inter alia*:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

The campaign is engineered to extend beyond initial awareness to deepen Gen Z engagement on platforms like TikTok and YouTube. This mid-funnel strategy utilizes platform-optimized storytelling to illustrate the optimized money outcomes and financial guidance delivered through TurboTax and Credit Karma. The creative highlights key features—such as **Year-Round Control**, **Auto-Import**, and **Refund Advance**—alongside our core service offerings, including **On-Demand Expert Help**, the **DIY Free Mobile App**, and the **Full Service** flat-fee offer.

(Emphases in original.)

37.    On February 26, 2026, Intuit issued a press release announcing its second quarter ("Q2") 2026 results.  The press release "reiterated [Intuit's] full fiscal year 2026 segment revenue guidance", including "TurboTax growth of 8 percent[.]"

38.    The same press release quoted Defendant Goodarzi as touting Intuit's "outstanding second quarter, driven by disciplined execution," and that Defendant "are . . . ***disrupt[ing] the traditional assisted tax segment***" and "***accelerating execution*** and innovation[.]"

39.    The press release also quoted Defendant Aujla as stating:

We delivered a very strong second quarter of fiscal 2026, ***reflecting our continued business momentum across the big bets and our disciplined approach to managing the business . . . . Our momentum across the company continues to give us high confidence in delivering double-digit revenue growth and expanding margin this year, and we are reiterating our full year guidance for fiscal 2026.***

40.    Also on February 26, 2026, Intuit filed a quarterly report on Form 10-Q with the SEC, reporting its financial and operating results for its Q2 of 2026, ended January 31, 2026 (the "Q2 2026 10-Q").  The Q2 2026 10-Q contained substantively the same statements as referenced in ¶¶ 26-27, *supra*, regarding Intuit's purported "significant" competitive advantages, including its business strategy and AI technologies purportedly positioning it for "durable growth."

41.    The Q2 2026 10-Q also touted "***strength in TurboTax due to growth in assisted tax*** and our consumer money offerings."

42.    Appended as exhibits to the Q2 2026 10-Q were substantively the same SOX certifications as referenced in ¶ 29, *supra*, signed by the Individual Defendants.

43.    The statements referenced in ¶¶ 24-42 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) they had overstated Intuit's competitive advantages and growth, as well as the overall strength and sustainability of its business model and operations; (ii) in reality, Intuit was losing significant business in its tax-related business, particularly in its Turbo Tax business, as a result of, *inter alia*, increasing competitive and pricing pressures; (iii) accordingly, Intuit's previously issued FY 2026 TurboTax revenue growth guidance was unreliable and/or unrealistic; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

44.    Additionally, throughout the Class Period, Intuit's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Intuit to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants' failure to disclose, *inter alia*, that Intuit was losing significant business in its tax-related business, particularly in its Turbo Tax business, and/or was unlikely to meet its previously issued FY 2026 TurboTax revenue growth guidance, violated Item 105 because these issues represented material factors that made an investment in the Company speculative or risky.

45.    Likewise, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Intuit to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants'

11

failure to disclose, *inter alia*, the issues described in ¶ 44, *supra*, violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

### **The Truth Begins to Emerge**

46.    The truth began to emerge on May 20, 2026, when, during pre-market hours, *Reuters* published an article entitled "Intuit to cut 17% of global jobs to streamline operations, memo shows".  Citing an internal Company memorandum and email addressed from Defendant Goodarzi to staff earlier in the day, the article reported that "Intuit . . . is laying off about 17% of its workforce, or about 3,000 employees worldwide, to streamline operations and sharpen focus on its key bets including its AI efforts[.]"  The article further revealed that Intuit "is also winding down its Reno and Woodland Hills offices as part of a strategic restructuring to consolidate teams in key hubs, according to the memo."

47.    The foregoing news made headlines, with numerous other media outlets reporting on the *Reuters* article and foregoing disclosures, including, *inter alia*, *Bloomberg*, *CNBC*, *Seeking Alpha*, and the *New York Post*.

48.    Following the *Reuters* article's publication, Intuit's stock price fell $15.78 per share, or 3.95%, to close at $383.93 per share on May 20, 2026.

49.    The same day, during post-market hours, Intuit issued a press release announcing its Q3 2026 results.   Therein, Defendants reported weak Q3 2026 tax season revenue, including, *inter alia*, TurboTax revenue that grew by only 7% Y/Y, versus consensus estimates of at least 8% revenue growth.  During the accompanying earnings call held the same day, also during post-market hours, Defendant Aujla acknowledged that, with respect to Turbo Tax, "we did not have the overall tax season we expected[.]"  On the same call, Defendant Goodarzi likewise stated that he was "dissatisfied with our performance", noting "[w]e faced pressure among the most price-

12

sensitive DIY filers earning less than $50,000 a year", and that "[w]e lost on price." Defendant Goodarzi also revealed that TurboTax online paying units were expected to grow by only 2% as total IRS filers were expected to decline by approximately 30 basis points, representing the "most significant industry-wide contraction since the post-COVID tax season." Accordingly, Defendant Goodarzi acknowledged that "we expect TurboTax to grow 7% for the full year"—down from Defendants' prior guidance of 8% growth—and that, "[t]o reaccelerate this part of our business," Defendants will need to "evolve our business model by delivering the right lineups and price points to meet simple filers' needs at the low end and lean into the power of our broader Consumer platform to monetize beyond tax."

50.    Following these additional disclosures, Intuit's stock price fell $76.86 per share, or 20.02%, to close at $307.07 per share on May 21, 2026.

51.    The foregoing disclosures also prompted a slew of negative market analyst reactions, with numerous analysts slashing their price target ("PT") on Intuit's stock. For example, Susquehanna lowered its PT to $550.00 from $640.00, citing the weakness in Intuit's Q3 2026 results, and stating that "[w]hile the high-end tax (Assist) looked great, the low-end fell apart", and "that the low-end weakness could be sourced to a specific competitor[.]" KeyBanc Capital Markets, too, lowered its PT to $450.00 from $520.00, citing, *inter alia*, "TurboTax DIY headwinds and a pricing evolution across TurboTax[.]" RBC Capital Markets, meanwhile, lowered its PT to $500.00 from $600.00, noting "TurboTax disappoints" and that Intuit had "revised FY26 TurboTax guidance (~7% YoY vs. prior 8% YoY)", which "raised renewed fears around AI automation displacing tax software, sending shares down ~(-14%) AMC [after market close]." Truist Securities also lowered its PT to $410.00 from $500.00, citing Intuit's "lowered . . . growth target for TurboTax from 8% to 7%, . . . weakness in price-sensitive DIY filers (<$50k

13

annually) and an unforeseen 30 bps compression (roughly 2M fewer) vs. expectations of +100bps expansion in IRS filers."

52.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**SCIENTER ALLEGATIONS**

53.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  For example, during the Class Period, while disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for Intuit's securities, Defendant Goodarzi enriched himself by over $36 million by selling tens of thousands of shares of the Company's common stock at artificially inflated prices, whereas Defendant Aujla enriched himself by over $5 million by likewise selling thousands of shares of the Company's common stock at artificially inflated prices.

54.     Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. Defendants were laser-focused on Intuit's tax-related business at all relevant times, as exhibited by their repeated and highly specific statements regarding TurboTax and Intuit's other tax-related business segments in press releases and financial reports throughout the Class Period, as detailed herein.  Indeed, during the Class Period, Defendants repeatedly and consistently touted purported "momentum *across* the company" and strength in Intuit's tax-related business, while likewise repeatedly and consistently reaffirming FY 2026 financial guidance for TurboTax revenue growth, presumably while this very same segment significantly degraded.  Defendants were also simultaneously reaping millions of dollars in proceeds by cashing in on sales of thousands of shares of the Company's common stock at artificially inflated prices, as detailed *supra*.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

55.    Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

56.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Intuit securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

57.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Intuit securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Intuit or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

58.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

15

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

59.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

60.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Intuit;

- whether the Individual Defendants caused Intuit to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Intuit securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

61.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

62.     Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

16

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Intuit  securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Intuit securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

63.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

64.    Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

65.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

66.    This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

17

67.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Intuit securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Intuit securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

68.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Intuit securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Intuit's finances and business prospects.

69.    By virtue of their positions at Intuit, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

18

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

70. Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Intuit, the Individual Defendants had knowledge of the details of Intuit's internal affairs.

71. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Intuit. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Intuit's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Intuit securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Intuit's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Intuit securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

72. During the Class Period, Intuit securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Intuit securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Intuit securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Intuit securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

73.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

74.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

75.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76.    During the Class Period, the Individual Defendants participated in the operation and management of Intuit, and conducted and participated, directly and indirectly, in the conduct of Intuit's business affairs.  Because of their senior positions, they knew the adverse non-public information about Intuit's misstatement of income and expenses and false financial statements.

77.     As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Intuit's financial condition and results of operations, and to correct promptly any public statements issued by Intuit which had become materially false or misleading.

78.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Intuit disseminated in the marketplace during the Class Period concerning Intuit's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Intuit to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Intuit within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Intuit securities.

79.     Each of the Individual Defendants, therefore, acted as a controlling person of Intuit.  By reason of their senior management positions and/or being directors of Intuit, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Intuit to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Intuit and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

80.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Intuit.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.      Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  July 10, 2026

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

SCHALL BROWN & SCHWARTZ LLP
Brian Schall (SBN 290685)
Andrew Brown (SBN 160562)
2049 Century Park East, Suite 2460
Los Angeles, CA 90067
Telephone: (310) 301-3335

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

brian@schallfirm.com
andrew@schallfirm.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS